

# NUMBER 13-17-00653-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

THE CAMERON COUNTY DISTRICT
ATTORNEY IN HIS OFFICIAL
CAPACITY REPRESENTING
THE STATE OF TEXAS,                                    Appellant,

v.

JLM GAMES AND GGL VENDOR
LEASING LLC,                                           Appellees.

## On appeal from the 357th District Court
## of Cameron County, Texas.

# DISSENTING MEMORANDUM OPINION

**Before Justices Benavides, Perkes, and Wittig[1]**
**Dissenting Memorandum Opinion by Justice Wittig**

---

[1] Retired Fourteenth Court of Appeals Justice Don Wittig, assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to the government code. *See* TEX. GOV'T CODE ANN. § 74.003.

For the reasons set for below, I respectfully dissent.

## I. GAMBLING DEVICES

Pursuant to chapter 47 of the Texas Penal Code, it is illegal to play and bet at a game played on a gambling device for money or other thing of value. TEX. PENAL CODE ANN. § 47.02(a)(3). A "gambling device" is defined as

> any electronic, electromechanical, or mechanical contrivance . . . that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the price is automatically paid by the contrivance.

*Id*. § 47.01(4) (chapter 41 definitions). However, a "gambling device"

> does not include any electronic, electromechanical, or mechanical contrivance designed, made, and adapted solely for bona fide amusement purposes if the contrivance rewards the player exclusively with noncash merchandise prizes, toys, or novelties, or a representation of value redeemable for those items, that have a wholesale value available from a single play of the game or device of not more than 10 times the amount charged to play the game or device once or $5, whichever is less.

*Id*. § 47.01(4)(B).

## II. STANDING AND RIPENESS

**A.    Applicable Law**

Standing is a component of subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–46 (Tex. 1993). The standing issue relates to the question of who may bring an action. *Patterson v. Planned Parenthood of Hous. & S.E. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). The general test for standing in Texas is stated to require that there be a real controversy between the parties that will be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. Standing requires a personal stake in the controversy. *In Interest of B.I.V.*, 923 S.W.2d

2

573, 574 (Tex. 1996); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). The appellate court reviews the entire record to determine if any evidence supports standing, and it construes the petition in favor of the plaintiffs. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445–46.

Ripeness is an element of justiciability, rooted in the prohibition of advisory opinions by the judiciary. *Patterson*, 971 S.W.2d 439, 442 (Tex. 1998); *see Perry v. Del Rio*, 66 S.W.3d 239, 249–52 (Tex. 2001). The ripeness issue "asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote." *Patterson*, 971 S.W.2d at 442. It seeks to avoid premature adjudication, focusing on whether the case involves "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id*.

## B.    Analysis

In their petition, appellees attached the affidavit of Jimmy Martin, owner of GGL Vendor Leasing, LLC. In his affidavit, Martin asserted that his area manager informed him that even if appellants operated machines "in full and legal compliance with all applicable laws in Texas," the State would nonetheless "shut down the operation" of such machines.[2]

Therefore, the existence or nature of appellee's claims is not dependent on uncertain future events. Under its pleadings and the evidence before us, I would conclude that injury is likely to occur rather than being contingent or remote, and therefore, appellees' claims are ripe for adjudication. *See Patterson*, 971 S.W.2d at 442; *see also Ryder Integrated Logistics*, 453 S.W.3d at 927.

---

[2] The State did not object to this evidence during the plea to the jurisdiction proceedings.

3

Moreover, construing appellees' pleadings liberally, I would conclude that appellees have a personal stake in the controversy. *In Interest of B.I.V.*, 923 S.W.2d at 574; *Hunt*, 664 S.W.2d at 324. Appellees allege that they have purchased specialized machines to comply with chapter 47 and that the State is preventing them from using those lawful machines by its threat to confiscate them without determining whether the machines are illegal eight-liners. *See Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 928 (Tex. App.—Austin 2010, no pet.) (explaining that by alleging an ordinance restricted the use of their property, the plaintiffs "demonstrated the required actual, concrete, and particularized infringement of their legally protected interests necessary for standing"). Thus, a real controversy exists between the parties that will be determined by the judicial declaration sought. *Tex. Ass'n of Bus.*, 852 S.W.2d at 446. I would overrule the State's first and second issues.

### III. JURISDICTION OF CIVIL COURT OVER CRIMINAL STATUTE

Next, by its third issue, the State contends that the trial court lacked jurisdiction over appellee's claims because appellees are seeking civil review of a criminal matter. Specifically, the State argues that appellees failed to invoke the civil court's jurisdiction over this criminal matter because appellees did not attack the constitutionality of chapter 47 and establish that they suffered an irreparable injury to vested property rights.[3] *See State v. Morales*, 869 S.W.2d 941, 942 (Tex. 1994) (establishing when a civil court has jurisdiction over the constitutionality of a criminal statute); *see also Passel v. Fort Worth Indep. Sch. Dist.*, 440 S.W.2d 61, 63 (Tex. 1969) ("It is well settled that courts of equity

---

[3] As noted above the trial court in this case has both criminal and civil jurisdiction. This matter was not briefed by the parties, and I therefore do not address the significance, if any.

4

will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional, and its enforcement will result in irreparable injury to vested property rights."). Appellees respond that they are requesting declaratory and injunctive relief on the basis that the statute "as applied" to them is unconstitutional and that the State is violating their vested property rights as protected by Article I sections 9, 17, and 19 of the Texas Bill of Rights. *See id.*

## A. Applicable Law

Texas has a bifurcated system of civil and criminal jurisdiction, and generally, a civil court cannot enjoin the enforcement of penal statutes or make declarations of "rights, status or other legal relationships arising under a penal statute." *Morales*, 869 S.W.2d at 948 (internal quotations omitted). It has been long recognized in Texas that ordinarily criminal courts determine the meaning and validity of a penal statute or ordinance. *Id*. at 945. However, a civil court of equity has jurisdiction to declare a penal statute unconstitutional and enjoin its enforcement when

> (1) there is evidence that the statute at issue is unconstitutionally applied by a rule, policy, or other noncriminal means subject to a civil court's equity powers and irreparable injury to property or personal rights is threatened, or (2) the enforcement of an unconstitutional statute threatens irreparable injury to property rights.

*Id*. at 942.

Thus, *Morales*, establishes a civil court's equitable power to enjoin the enforcement of a statute that is unconstitutional as applied versus a facially unconstitutional statute. *See id*.; *Combs v. STP Nuclear Operating Co.*, 239 S.W.3d 264, 272 n.8 (Tex. App.—Austin 2007, pet. denied) (citing Michael C. Dorf, Facial Challenges to State and Federal Statutes, 46 Stan. L.Rev. 235, 236 (1994)); *see also City of Dallas*

*v. Nickles & Dimes, Inc.*, No. 05-95-01507-CV, 1997 WL 284613, at *2 (Tex. App.—Dallas May 30, 1997, no writ) (mem. op.) (recognizing that *Morales* establishes and allows an as-applied constitutional challenge in a civil court of equity). When an as-applied challenge is made, the party "need only show that the statute is unconstitutional because of the manner in which it was applied in a particular case." *Combs*, 239 S.W.3d at 272 n.8 (citing *Tex. Workers' Comp. Com'n v. Garcia*, 893 S.W.2d 504, 518 n. 16 (Tex. 1995). As-applied challenges must be brought on a case-by-case basis because they are fact specific. *Id*. "[W]hen a court finds a statute unconstitutional as applied to a particular set of facts, the statute may be constitutionally enforced under different facts." *Id*. A party challenging the statute facially "bears a heavy burden of showing that the statute is unconstitutional in all of its applications." *Id*. (citing *States v. Salerno*, 481 U.S. 739, 745 (1987); *Tex. Workers' Comp. Comm'n*, 893 S.W.2d at 518 n.16).

## B.      Discussion

The *Morales* court explained that "courts of equity will not interfere with the ordinary enforcement of a criminal statute unless the statute is unconstitutional and its enforcement will result in irreparable harm." *Morales*, 869 S.W.2d at 945. The *Morales* court noted that in *Passel*, "the plaintiffs did not seek a naked declaration of [a] penal statute's unconstitutionality," and instead "sought a declaration of the invalidity of the statute and an injunction against enforcement. . ." of a rule and there was no threat or even contemplation of prosecution. *Id*.

> In *Passel*, the minor plaintiffs sought a declaration that a penal statute unconstitutionally denied rights of free association, and an injunction to prevent school officials from denying them admission to public schools because of membership in certain student clubs. *Passel*, 440 S.W.2d at 62. No injunctive relief was sought against the statute itself, Article 301d,9 which prohibited certain clubs in all public schools of the state below college

level.  *Passel*, 440 S.W.2d at 64.  Rather, injunctive relief was sought solely to "prevent administrative enforcement of an administrative regulation adopted for the purpose of implementing the statute."  *Id.*

*Morales*, 869 S.W.2d at 945–46.  In *Passel*, the Texas Supreme Court concluded that under those circumstances, the trial court had jurisdiction.  *Id.* at 946.

> The *Passel* court determined that if true the plaintiffs' contention constituted "an unwarranted interference with the constitutionally protected right of free and private association."  *Passel*, 440 S.W.2d 61, 64 (Tex. 1969).  The court explained that "criminal courts cannot determine the meaning and validity of the statute unless a prosecution is instituted," and therefore, the plaintiffs had "no way to attack the rule except by administrative appeal or a civil action."  *Id.*  The court stated that "civil courts are not powerless to grant relief under these circumstances," and held that the trial court had "jurisdiction to construe and determine the constitutionality of the criminal statute in this proceeding."  *Id.*

*Morales*, 869 S.W.2d at 946.

Here, like the plaintiffs in *Passel*, appellees did not request to enjoin prosecution of the statute itself or seek a declaration that their machines are not illegal, nor do they seek a naked declaration as to the constitutionality of a criminal statute.  Instead, appellees seek injunctive and declaratory relief to prevent the State's unconstitutional "enforcement of the rules, regulations, policies and procedures" used to confiscate machines appellees claim are not prohibited by chapter 47—machines that the State threatened to confiscate even if they are "in full and legal compliance with all applicable laws in Texas."  *See* TEX. PENAL CODE ANN. § 47.01(4) (defining what is and is not a gambling device); *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (explaining that the appellate court must take the factual allegations in the plaintiff's pleadings as true).

Construed liberally, appellees' pleadings affirmatively attack the constitutionality of the State's *application* of chapter 47 under the Texas Constitution as applied to them.

7

*See City of Elsa*, 226 S.W.3d at 392 ("[A] plaintiff whose constitutional rights have been violated may sue the state for equitable relief."); *see also Passel*, 440 S.W.2d at 64 (explaining that although prosecution was neither threatened or even contemplated, the plaintiff's immediate complaint was within the courts equity jurisdiction and remediable by the court's equity jurisdiction); *Combs*, 239 S.W.3d at 272 n.8. Appellees are not seeking to invalidate chapter 47 on its face or seek a ruling that chapter 47 is unconstitutional in all its applications. *See Combs*, 239 S.W.3d at 272 n.8.

Moreover, in *Morales*, which forms the basis of the State's argument here, the plaintiffs sought to enjoin criminal prosecution under that statute and a declaration of their "rights, status, or other legal relationship" under the Texas sodomy laws and that the sodomy law was unconstitutional. 869 S.W.2d at 943. The *Morales* court's entire analysis and holding "was thus carefully limited to whether a court exercising civil jurisdiction could declare a criminal statute unconstitutional or enjoin its prosecution." *See Tex. Alcoholic Beverage Com'n v. Am. Legion Knebel Post 82*, No. 03-11-00703-CV, 2014 WL 2094195, at *6 (Tex. App.—Austin May 16, 2014, no pet.) (mem. op.) (citing *Morales*, 869 S.W.2d at 943).

I question whether *Morales* even governs. *See City of Argyle v. Pierce*, 258 S.W.3d 674, 681 (Tex. App.—Fort Worth 2008, pet. dism'd) (concluding that *Morales* did not apply because the appellees were not challenging the constitutionality or the enforceability of an ordinance and instead were seeking a declaration that their conduct did not constitute a violation of the ordinance). For example, in *Morales,* the plaintiffs acknowledged that their behavior was illegal under the sodomy statute. And here, accepting appellees' allegations as true, appellees' machines are not used in a manner

8

that is prohibited by chapter 47and are permitted under § 47.01(4)(B). *See* TEX. PENAL CODE ANN. § 47.01(4) (defining what is and is not a gambling device); *Mission Consol. Indep. Sch. Dist. v. Flores*, 39 S.W.3d 674, 676 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.) (explaining that an appellate court must take the factual allegations in the plaintiff's pleadings as true). In addition, the State is threatening to confiscate the machines even if appellees do not use the machines in a manner that constitutes illegal gambling pursuant to chapter 47. Again, accepting the truth of appellees' pleading, the machines themselves are not prohibited by the statute; instead, it is the manner of the machines' use that is prohibited, and appellees' machines are not being used as gambling devices as defined in chapter 47. *Mission Consol. Indep. Sch. Dist.*, 39 S.W.3d at 676. Thus, appellees are seeking a declaration that the State is violating its constitutional rights by threatening to confiscate property that they are not prohibited from using or owning. *See City of Argyle*, 258 S.W.3d at 681. Nonetheless, under the precedent as set out in *Passel*, I would conclude that appellees have pleaded facts establishing that the statute is unconstitutional as applied to them by the State's rule, policy, or other noncriminal means, which is subject to a civil court's equity powers. *See Passel*, 440 S.W.2d at 64; *see also Morales*, 869 S.W.2d at 942.

Next, the State asserts in one sentence in a footnote that appellees have not met their burden of demonstrating the trial court's jurisdiction because appellees failed to establish an irreparable injury to a vested property right. *See Morales*, 869 S.W.2d at 945. The State does not provide any substantive argument with citation to appropriate authority explaining which prong they challenge—whether appellees failed to establish an irreparable injury or to show they have a vested property right. *See* TEX. R. APP. P.

9

38.1(i).  Nonetheless, I would construe the State's brief as arguing that appellees have not shown that they have a vested property right to use the machines in a certain way without restriction.[4]  *See Sterling v. San Antonio Police Dep't*, 94 S.W.3d 790, 794 (Tex. App.—San Antonio 2002, no pet.) (concluding that the appellant did not have a vested property right to use gambling devices); *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 270 (Tex. App.—Corpus Christi-Edinburg–Edinburg 2011, no pet.) (concluding that the merchants had a vested property right in their pipes).  I disagree with the State that appellees have not shown they have a vested property right and with its premise that appellees are arguing that they have a vested right to use the machines without restriction.  Appellees are not attempting to use the machines as gambling devices as defined by chapter 47.  They are attempting to use the machines in a legal manner as allowed by chapter 47.  *See* TEX. PENAL CODE ANN. § 47.01(4)(B).

> "Property rights are created and defined by state law," and "include actual ownership of real estate, chattels, and money."  "A right is 'vested' when it 'has some definitive, rather than merely potential existence.'"  But this right does not automatically translate to a "vested property right" to use said property a particular way or in a particular location, although these activities may be aspects of broader personal rights or liberties.

*City of New Braunfels v. Stop the Ordinances Please*, 520 S.W.3d 208, 214 (Tex. App.—Austin 2017, pet. denied) (internal citations omitted).

Even if a plaintiff has a vested right in the property he owns, he does not have a vested right to use the property in any way he wishes.  *See Stop the Ordinances Please*, 306 S.W.3d at 931.  For example, in *Stop the Ordinances Please*, the plaintiff had a vested right in ownership of a cooler, but he did not have a vested right to carry a cooler

---

[4] I would not address whether appellees established that the will suffer an irreparable injury as it is not adequately briefed.  *See* TEX. R. APP. P. 38.1(i).

10

of a particular size; therefore, because the ordinance *banned* coolers of a certain size, the plaintiff did not prove that he had a vested right to use the banned cooler. *See id.* In this case, however, appellees are attempting to utilize machines that they allege have not been *banned* by chapter 47; they allege that the State has threatened to confiscate machines that are not prohibited by chapter 47—machines that they claim are being used in a legal manner and that cannot be confiscated by the State under any law. The State provided no evidence to the trial court showing that appellees' machines are illegal or being used in an illegal manner. Thus, I would conclude that appellees have met their burden of establishing that they have a vested right to use the machines for jurisdictional purposes. *See id.*; *Ryder Integrated Logistics, Inc.*, 453 S.W.3d at 927; *see also City of Corpus Christi*, 398 S.W.3d at 270 ("A seller does have a vested property right in the possession of legal, physical items of inventory that it owns.").

Moreover, in *City of Laredo v. Laredo Merchants Association*, the plaintiffs, who were vendors, sought equitable relief from a civil court regarding a city ordinance which prohibited the use of plastic bags. 550 S.W.3d 586, 591 (Tex. 2018). The Texas Supreme Court held that it had jurisdiction. *Id.* at 592 n.28. The court explained that "civil courts have jurisdiction to enjoin or declare void an unconstitutional penal ordinance when 'there is the threat of irreparable injury to vested property rights,'" and "where the ordinance prohibits the complaining vendors from using noncompliant bags and, if they do, imposes a substantial per-violation fine that effectively precludes small local businesses from testing the ban's constitutionality in defense to a criminal prosecution." *Id.*

Thus, like the plaintiffs in *City of Laredo*, the statute at issue here prohibits

11

appellees from using their machines or face the threat of criminal prosecution even if the machines are not illegal gambling devices. *Id*. at 592. Therefore, because the statute allows the State to confiscate these machines without any set rules or procedures to ensure that the machines are in fact illegal, appellees may not use them. Irreparable harm has been "deemed met in situations where the government's enforcement of the penal law in question entails irremediable physical destruction or damage to real or personal property that would occur before the challenge could be litigated in a criminal proceeding." *Stop the Ordinances Please*, 520 S.W.3d at 216. Thus, because appellees are unable to use their machines, they are precluded from testing the ban's constitutionality in defense to a criminal prosecution, and if appellees do use the machines, the State has threatened to confiscate those machines, even if they are not prohibited. *See City of Laredo*, 550 S.W.3d 586, 592; *Stop the Ordinances Please*, 520 S.W.3d at 216.

Therefore, I would conclude that appellees have met their burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear this case under *Morales*. *Tex. Dep't of Transp.*, 74 S.W.3d at 867; *Morales*, 869 S.W.2d at 942; *see also City of Dallas*, 1997 WL 284613, at *3 ("[A] trial court can have jurisdiction to enjoin the noncriminal enforcement of a facially constitutional criminal statute, but lacks jurisdiction to enjoin the criminal enforcement of a facially constitutional statute. . . ."). I would overrule the State's third issue.

## IV. GOVERNMENTAL IMMUNITY

Lastly, the State argues that it is protected by governmental immunity. "[I]f the Legislature requires that the State be joined in a lawsuit for which immunity would

12

otherwise attach, the Legislature has intentionally waived the State's sovereign immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 697–98 (Tex. 2003). The Texas Declaratory Judgment Act expressly provides that persons may challenge ordinances or statutes, and that governmental entities must be joined or notified. *Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex. 1994). Governmental entities joined as parties may be bound by a court's declaration on their ordinances or statutes. *Id*.

Here, appellees are seeking equitable and declaratory relief under the TDJA questioning the validity of a statute, and therefore, pursuant to the TDJA, the State must be joined in this lawsuit. *See id*. Accordingly, the Legislature has intentionally waived State's sovereign immunity in this case, and the trial court has jurisdiction over the case. *See id*. I would overrule the State's fourth issue, and I would affirm the judgment.


DON WITTIG
Justice


Delivered and filed the
14th day of November, 2019.